**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WILLIAM MILLER,

Plaintiff-Appellant,

v.

PAUL SPIERS, MICHAEL FOX, and
DONNA ARBOGAST,

Defendants-Appellees.

No. 07-2134

(D. of N.M.)

(D.C. No. CIV-05-577-BB/LAM)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

In the course of investigating a murder in Albuquerque, New Mexico, police investigators suspected William Miller. Miller was arrested and spent seven weeks in custody, he claims on the basis of false evidence fabricated by the investigators. Immediately after the arrest, he was caught attempting to eat a couple of business cards he had hidden in his sock. These business cards, apparently containing names of Miller's associates, became evidence in the murder investigation, and although murder charges were eventually dropped

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

against him, Miller pleaded no contest to attempted tampering with evidence and received a suspended sentence.

He subsequently brought a lawsuit under 42 U.S.C. § 1983 against various individuals involved in the investigation, alleging the Defendants engaged in a continuing conspiracy to violate his Fourth and Fourteenth Amendment rights. The district court—treating Miller's allegations not as a single claim but as several separate Fourth and Fourteenth Amendment violations—granted summary judgment to Defendants on statute of limitations and qualified immunity grounds. Miller appealed.

Because the district court erred in failing to analyze Miller's allegations as a single § 1983 claim—one resembling the common law tort of malicious prosecution—summary judgment in favor of the Defendants was premature. Accordingly, we VACATE the district court's grant of summary judgment to Defendants and REMAND for further proceedings.

## I. Background

In three opinions issued concurrently, the district court resolved various summary judgment motions filed by Defendants. The following background presents relevant undisputed facts, as stated in the district court's opinions.

*A Murder in Albuquerque*

This case arises from the September 1999 murder of Girly Hossencofft in Albuquerque, New Mexico. Albuquerque Police Department detective Michael

Fox and forensic scientist Donna Arbogast, together with assistant district attorney Paul Spiers, investigated Mrs. Hossencofft's murder. Although Mrs. Hossencofft's body was never found, her husband, Diazien Hossencofft, and his girlfriend, Linda Henning, were eventually convicted of Mrs. Hossencofft's murder, kidnaping, and several other crimes. Early in the investigation, however, police investigators also targeted Mr. Hossencofft's acquaintance, William Miller, as a possible participant in Mrs. Hossencofft's murder. Miller alleges the police conspired to fabricate evidence against him for the murder.

In the course of their investigation, the police collected deer, rabbit, and cat hair, as well as feathers, from the living room carpet in Mrs. Hossencofft's apartment. They also discovered at a nearby highway a bloody blouse, thought to be Mrs. Hossencofft's, wrapped in a tarp. Rabbit and cat hair along with feathers were also collected from the tarp and blouse. A steam cleaner the police thought was used to clean the carpet in Mrs. Hossencofft's apartment likewise contained deer hair. Deer, rabbit, and cat hair, as well as feathers, are all used for tying flies for fly fishing.

Armed with this evidence, and having learned from the investigation that Miller was a fly fisherman, Detective Fox applied for a search warrant on Miller's residence in December 2000, seeking "any and all materials used in fishing, hunting, gaming, or tying flies for fishing to include but not be limited to deer hair," as well as "any and all trace evidence." Aplt. App. at 1180 (brackets

omitted).  In executing the search warrant, the police collected feathers as well as deer, rabbit, and cat hair.  They turned the evidence over to Arbogast's forensics department for testing.

*Miller's Arrest*

On February 12, 2001, Fox prepared an affidavit for Miller's arrest warrant. In the affidavit, he linked the trace evidence collected during the December 2000 search to Mrs. Hossencofft's murder.  The police arrested Miller the same day.

Immediately after his arrest and while in police custody, Miller hid a couple of business cards in his sock.  He then attempted to eat two of these cards and in the process tore one card into several pieces.  The police saw Miller try to eat the cards and made him spit them out.  We cannot tell from the record whose names or businesses appeared on the cards, but the police believed the cards contained the names of Miller's associates who could help in the criminal investigation.  The police thus believed Miller tried to hide and destroy evidence in an attempt to hinder their prosecution.

*Charges Against Miller*

After his arrest on February 12, Miller spent seven weeks in jail.  Between February 21 and 23, the State of New Mexico presented its case against Miller to a grand jury.  Fox and Arbogast both testified, allegedly supplying false information and omitting critical details about the evidence linking Miller with Mrs. Hossencofft's murder.  For example, Miller alleges Arbogast failed to

explain to the grand jury that DNA testing of the human hair collected from the tarp specifically excluded Miller but did not exclude Mr. Hossencofft's girlfriend Henning. And Fox allegedly falsely testified he found Henning's burnt business card inside Miller's fireplace.

The grand jury indicted Miller for conspiracy to commit murder, kidnaping, and conspiracy to commit kidnaping. In addition, the grand jury indicted Miller on several charges of tampering with evidence, including three counts stemming from Miller's attempt to eat the business cards.

More than a year later, on May 21 to 23 of 2002, the prosecution, likely prompted by Miller's attorney challenging the alleged falsehoods made during the February 2001 grand jury proceedings, presented its case against Miller to another grand jury. Fox and Arbogast again testified, though Miller alleges this time only Fox provided false information. On May 24, that grand jury indicted Miller for the same counts of tampering with evidence as did the February 2001 grand jury, but not for kidnaping, conspiracy, or murder.

In May 2002, then, Miller faced two outstanding indictments—one from the February 2001 and one from the May 2002 grand jury proceedings. On May 24, assistant district attorney Spiers filed a *nolle prosequi*[1] and dismissed the

---

[1] A *nolle prosequi* represents a "legal notice that a . . . prosecution has been abandoned." *Black's Law Dictionary* 1074 (8th ed. 2004).

conspiracy, murder, and kidnaping charges against Miller. The tampering counts, however, remained.

Still attempting to locate enough evidence to convict Miller of Mrs. Hossencofft's murder, on February 12, 2003 Fox prepared an affidavit in support of a search warrant for Miller's house. Fox sought the warrant to search the house for "any and all tapes containing conversations between Plaintiff and his psychic, Cynthia Hess." Aplt. App. at 1197 (brackets omitted). Defendant Spiers approved the affidavit over the phone. The affidavit contained allegedly false information although Miller does not contend Arbogast provided the false information or withheld any exculpatory evidence.

*Miller Pleads to Attempted Tampering with Evidence*

On July 16, 2003, Miller pleaded no contest to three counts of attempted tampering with evidence—the counts related to his attempt to eat the business cards on February 12, 2001. In consideration for his plea, the state dropped the two other tampering counts. On October 8, Miller received a suspended sentence of 364 days for attempted tampering with evidence.

## II. Analysis

We review the district court's grant of summary judgment de novo using the same standard applied by the district court. *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Concluding no genuine issue of material fact existed, the district court resolved summary judgment as a matter of law, ruling in favor of Defendants on statute of limitations and qualified immunity grounds.

## A. District Court's Characterization of Miller's Suit

In analyzing Defendants' summary judgment motions, the district court interpreted Miller's complaint as stating five separate causes of action: (1) a Fourth Amendment violation related to the December 2000 search warrant; (2) a Fourth Amendment violation related to Miller's arrest on February 12, 2001; (3) a Fourteenth Amendment violation regarding the February 2001 grand jury proceedings; (4) a Fourteenth Amendment violation regarding the May 2002 grand jury proceedings; and (5) a Fourth Amendment violation related to the February 2003 search warrant. The district court concluded the first three claims were barred by New Mexico's three-year statute of limitations for personal injury suits. And on the remaining two claims, the court concluded Miller failed to overcome Defendants' qualified immunity defense. Notably, the court determined that Miller's complaint failed to assert a cause of action for malicious prosecution, and even if it had, the claim would be precluded because Miller could not demonstrate a favorable termination on the tampering charges. On this latter conclusion, we disagree.

Miller argues the district court erred in failing to recognize that his complaint, rather than alleging five separate claims, stated but *one single claim* under a malicious prosecution theory. He analogizes his case to our decision in *Robinson v. Maruffi*, 895 F.2d 649, 654 (10th Cir. 1990), where a § 1983 plaintiff alleged a "conspiracy . . . to cause his malicious prosecution." Miller's allegation accuses Defendants of conspiring to fabricate probable cause to implicate him in Mrs. Hossencofft's kidnaping and murder, which resulted in his seven-week long confinement.[2]

Because Miller's confinement was preceded by an arrest pursuant to a warrant, an analogous cause of action is indeed malicious prosecution, grounded in the Fourth Amendment guarantee to be free from unreasonable seizures. *See Wilkins v. DeReyes*, 528 F.3d 790, 797–99 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1526 (2009). In disputing the existence of probable cause to support his arrest warrant, Miller challenges the institution of legal process against him. He also challenges the 2001 and 2002 indictments, obtained after allegedly false testimony by the Defendants at the respective grand jury proceedings, thereby

_____

[2] In particular, in response to questioning from the panel at oral argument, Miller disclaimed the notion that his suit was pursuing a number of separate claims. Rather, Miller argued the complaint alleged a *single* claim the Defendants engaged in a "conspiracy to violate [his] constitutional rights. . . . [His] Due Process [rights] and several ones under the Fourth Amendment." Oral Arg. at 5:49–6:06. Miller maintains that, in essence, his single § 1983 claim aggregated all the instances of alleged constitutional violations by the Defendants and the closest tort analog for his suit was a malicious prosecution claim. *Id.* at 6:34–6:58.

-8-

implicating his Fourteenth Amendment due process rights. Thus as Miller apparently contends, we see this case as a single Fourth *and* Fourteenth Amendment malicious prosecution claim. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (noting that a malicious prosecution claim can be grounded in both the Fourth and Fourteenth Amendments); *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir. 2004) ("The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.").

Miller's allegations that the February 2001 arrest warrant and the subsequent prosecution for murder, conspiracy, and kidnaping were not supported by probable cause are sufficient, at least at this stage, to maintain his malicious prosecution claim. Miller has not been consistent in explaining the legal grounds for his claim, and as a result, the district court's analysis is understandable. Nevertheless, the district court reached an erroneous conclusion regarding the character of Miller's malicious prosecution claim and therefore summary judgment was inappropriate.

**B. Malicious Prosecution Theory as a Basis for Miller's § 1983 Claim**

With this background in mind, we turn to Miller's claim properly characterized as a malicious prosecution conspiracy by the Defendants. Under our cases, a § 1983 malicious prosecution claim requires proof of the following elements: (1) the defendant caused the plaintiff's continued confinement or

prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Novitsky*, 491 F.3d at 1258; *see also Wilkins*, 528 F.3d at 799. At this point, the primary issue appears to be whether Miller satisfied the favorable termination element.

The district court concluded that although Miller did not allege a malicious prosecution by the Defendants, if he had, such a claim would be barred by a lack of a favorable termination on the attempted tampering charges. Miller, as a foundation of his malicious prosecution claim, challenges as unlawful his February 12, 2001 arrest, after which he spent seven weeks in custody. It is unclear, however, whether Miller's complaint contends the attempted tampering charges were unlawfully initiated or prosecuted. Nor does Miller make clear whether the attempted tampering charges were part of the Defendants' conspiracy to maliciously prosecute him.

For purposes of this appeal, we assume Miller claims the Defendants only conspired to prosecute him for the murder and kidnaping offenses without probable cause. Allowing Miller to attack only these charges in his malicious prosecution claim is entirely consistent with the common law of malicious prosecution, which allows a plaintiff to challenge prosecutions on a charge-by-charge basis. *E.g.*, *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009) ("[T]he

favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole."); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe an individual committed one crime—and even his conviction of that crime—does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge.").  Viewed in this light, Miller's convictions for attempted tampering with evidence do not necessarily foreclose his malicious prosecution claim concerning the charges that were ultimately dismissed—that claim challenges the murder and kidnaping prosecutions and *may* remain viable even though Miller admitted to attempting to tamper with evidence.[3]

But even so, if the alleged conspiracy by the Defendants included the fabrication of an evidence tampering claim, it is inconsistent for Miller to plead no contest to attempted tampering with evidence—evidence that *may* have been relevant to the allegedly fabricated charges of murder and kidnaping.  His legal

_____

[3] For this reason, with respect to Miller's claim regarding the murder, conspiracy, and kidnaping charges, we cannot conclude—at this stage—that there was no favorable termination.  In particular, after the May 2002 grand jury indicted Miller on several counts of tampering with evidence, the prosecutor dismissed an earlier indictment containing the same counts in addition to the murder, conspiracy, and kidnaping charges.  "To decide whether a *nolle prosequi* constitutes a favorable termination, we look to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence." *Wilkins*, 528 F.3d at 803.  A bare dismissal, without more, is not indicative of innocence and the plaintiff has the burden of proving a favorable termination. *Id.*

theories are premised on an alleged conspiracy to maliciously prosecute—but his plea repudiates that concept by accepting charges brought pursuant to that conspiracy.[4]  In other words, since Miller ultimately entered no contest pleas to *some* of the charges in the indictments, how can there be a malicious prosecution claim sounding in a single conspiracy?  Why would Miller destroy evidence if he had committed no crime?

The record before us does not permit a definitive conclusion about why the murder and kidnaping charges were dismissed and how the dismissal is related to the tampering charges.  Further, the parties did not have the opportunity to address this particular element in their arguments at the district court.  It could be Miller's attempted tampering with evidence contributed to the dismissal.  In such a case, Miller's claim may be precluded.  *Wilkins*, 528 F.3d at 803–04 (noting that misconduct by a § 1983 claimant may turn a *nolle prosequi* into an unfavorable termination).  Similarly, if Miller's claim alleges the Defendants' conspiracy included wrongfully instituting and pursuing the tampering charges, it is possible that *Heck v. Humprey*, 512 U.S. 477 (1994), may operate to bar Miller's claim since the lawsuit would then impugn the validity of his conviction on those charges.

---

[4]  New Mexico defines "conviction" to include pleas of no contest.  *See Howard v. Dickerson*, 34 F.3d 978, 981 n.2 (10th Cir. 1994) (citing N.M. Stat. § 30-1-11).

Alternatively, the prosecution's case against Miller may not have been supported by probable cause. *Wilkins*, 528 F.3d at 804 (stating that in such a circumstance a dismissal may be indicative of innocence and thereby constitute a favorable termination). Because neither the parties' arguments nor the record presents a definitive answer to this question, we must remand this issue for further consideration by the district court. *See Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304, 1309–10 (10th Cir. 2007) (stating that "[i]t would be unfair to affirm a summary judgment against a plaintiff for lack of evidence of an element of the cause of action unless the defendant has clearly challenged that lack of evidence in district court" and therefore refusing to affirm the grant of summary judgment on that new ground).

In sum, the district court must, in the first instance, determine the particular confines of Miller's malicious prosecution claim. Specifically, the court should address which charges Miller contends were either without probable cause or were improperly prosecuted, and what specific conduct by the Defendants is included within this singular claim. Further, the court should inquire into (1) whether Miller's attempted tampering by destroying the business cards bore upon the prosecutor's ultimate decision to dismiss the murder, conspiracy, and kidnaping charges, or (2) whether the tampering charges are integral to the alleged conspiracy by the Defendants such that his § 1983 claim would impugn

the validity of his tampering convictions.  If Miller's conduct did in fact result in the *nolle prosequi*, then Miller's claim may very well be precluded.

### C.  Statute of Limitations

Finally, we must note that in granting summary judgment to the Defendants, the district court concluded that three of Miller's claims were barred by the statute of limitations: (1) the Fourth Amendment claim arising from the December 2000 search warrant; (2) the Fourth Amendment claim arising from the February 12, 2001 arrest; and (3) the Fourteenth Amendment claim arising from the February 2001 grand jury proceedings.  While these conclusions may have been correct with respect to these claims as separate violations, because we construe Miller's § 1983 complaint to state a single claim for malicious prosecution, the accrual analysis is different.

A malicious prosecution claim accrues, at the earliest, when favorable termination occurs.  *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008).  Here, the allegedly favorable termination occurred when the prosecutor filed the *nolle prosequi* as to the conspiracy and kidnaping charges on May 24, 2002.  Miller filed this action on May 24, 2005—within the applicable three-year statute of limitations for civil rights actions under the applicable New Mexico statute.  *See* N.M. Stat. Ann. § 37-1-8 (1978); N.M.R.A. 1-006-A; *Mondragon*, 519 F.3d at 1082.  Thus, Miller's malicious prosecution action is timely.

### III.  Conclusion

For the foregoing reasons, we VACATE the district court's grant of summary judgment and REMAND to the district court for further proceedings.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge