**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIAM MILLER,

  Plaintiff - Appellant,

v.

DONNA ARBOGAST, MICHAEL
FOX, and PAUL SPIERS,

  Defendants - Appellees.

No. 11-2010

D. New Mexico

(D.C. No. 6:05-CV-00577-BB-LAM)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **BRORBY**, and **GORSUCH**, Circuit Judges.

---

**I. Introduction**

Plaintiff-Appellant, William Miller, appeals from the entry of summary

judgment in favor of Defendants Donna Arbogast, Michael Fox, and Paul Spiers

in this 42 U.S.C. § 1983 malicious prosecution action. Miller's claims arise from

the investigation of the 1999 murder of Girly Hossencofft in Albuquerque, New

Mexico. The district court granted summary judgment to all defendants because

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Miller failed to produce sufficient evidence from which a reasonable juror could find in his favor on each element of his claim. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court affirms.

## II. Background

Girly Hossencofft disappeared sometime between September 9 and September 10, 1999. On September 8, she called the Albuquerque FBI and told them she was afraid her husband, Diazien Hossencofft, was about to kill her. When she did not report to work on September 10, officers entered Girly's apartment to check on her safety. They discovered stains with a reddish tint on the carpet and a strong odor of bleach. The next day, New Mexico State Police Department officers discovered a tarp along U.S. Highway 60 near Magdalena, New Mexico ("the Magdalena tarp"). The tarp contained bloody clothing, cloth, duct tape, and gauze, as well as other trace evidence such as human hairs and both dyed and natural animal hairs. Girly's DNA was found on the tarp. Diazien Hossencofft, Girly's husband, and his girlfriend, Linda Henning, were eventually convicted of the murder and kidnaping of Girly, whose body was never found. Early in the investigation, however, Miller was also a suspect. Michael Fox was a detective at the Albuquerque Police Department and the lead investigator into Girly's disappearance and murder. Donna Arbogast was an Albuquerque Police Department forensic scientist involved in the investigation. Paul Spiers was an

assistant district attorney who presented evidence to the grand jury and who Miller alleges directed the investigation targeting him.

In 1999, Spiers sought a murder and kidnaping indictment against Miller in connection with Girly's disappearance. The 1999 grand jury did not return an indictment. On February 12, 2001, Fox attested to an arrest warrant for Miller. Spiers again sought an indictment, this time presenting testimony from Arbogast linking certain trace evidence found on the Magdalena tarp and in Girly's apartment, such as dyed and natural animal hair, with trace evidence found in Miller's residence. The 2001 grand jury did not return an indictment for first or second degree murder, but did return an indictment for conspiracy to commit first degree murder, kidnaping, conspiracy to commit kidnaping, and several evidence tampering charges. As a result of his 2001 arrest and indictment, Miller was incarcerated for approximately seven weeks. On May 24, 2002, a *nolle prosequi* was filed dismissing the 2001 indictment. In May of 2002, Spiers sought an indictment for a third time. The grand jury returned an indictment for five counts of evidence tampering against Miller, but did not return an indictment on any of the murder, conspiracy, or kidnaping charges. Miller pleaded no contest to three of the tampering charges. He then brought suit against Arbogast, Fox, and Spiers in the Federal District Court for the District of New Mexico under 42 U.S.C. § 1983.

This is the second appeal in this case. In *Miller v. Spiers*, 339 F. App'x 862, 867 (10th Cir. 2009), this court held Miller's claims were properly characterized as alleging a single malicious prosecution conspiracy by the defendants. The court therefore vacated the decision of the district court, which had granted summary judgment to the defendants by treating Miller's complaint as alleging multiple Fourth and Fourteenth Amendment violations. *Id.* at 864. On remand, the district court was instructed to analyze Miller's allegations as a single § 1983 claim resembling the common law tort of malicious prosecution. *Id.* This court also instructed the district court to address whether all or part of Miller's claim was precluded by lack of favorable termination or by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at 868–69.

On remand, the district court concluded Miller could not base his malicious prosecution claim on any of the evidence tampering charges due to lack of favorable termination. However, the court resolved the *Heck/*favorable termination issues in Miller's favor with respect to the conspiracy to commit murder and kidnaping charges. It nonetheless granted summary judgment to each defendant. As to Arbogast, the district court concluded there was no evidence from which a reasonable jury could conclude she fabricated evidence or conspired to fabricate evidence. As to defendants Fox and Spiers, the district court determined Miller's arrest was supported by probable cause, and hence no

reasonable juror could find in his favor on a malicious prosecution claim.  Miller

appeals.[1]

## III.  Discussion

### A.  Standard of Review

"We review a district court's grant of summary judgment de novo, using

the same standards applied by the district court."  *Baca v. Sklar*, 398 F.3d 1210,

1216 (10th Cir. 2005).  Summary judgment shall be granted when "the movant

shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To avoid

summary judgment, the nonmovant must make a showing sufficient to establish

an inference of the existence of each element essential to the case."  *Hulsey v.*

*Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986)).  "The nonmovant 'may not rest upon mere

---

[1]The court rejects Miller's arguments that disputed issues of material fact were already established during the previous round of summary judgment motions.  In *Miller v. Spiers*, 339 F. App'x 862, 869 (10th Cir. 2009), this court instructed the district court to: "determine the particular confines of Miller's malicious prosecution claim."  The district court was also instructed to "inquire into (1) whether Miller's attempted tampering by destroying the business cards bore upon the prosecutor's ultimate decision to dismiss the murder, conspiracy, and kidnaping charges, or (2) whether the tampering charges are integral to the alleged conspiracy by the Defendants such that his § 1983 claim would impugn the validity of his tampering convictions."  *Id.*  After addressing these issues, it remained for the district court to determine whether Miller could produce sufficient evidence to withstand a motion for summary judgment on the merits. The district court's conclusions on that issue are therefore properly before this court in this second appeal.

allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Reasonable inferences from the evidence must be drawn in favor of the non-moving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B. District Court's Decision

To state a claim for malicious prosecution, a plaintiff must show: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007). With respect to defendants Spiers and Fox, the district court concluded Miller failed to produce sufficient evidence to establish a genuine dispute of material fact as to the third element of his malicious prosecution claim: lack of probable cause. With respect to defendant Arbogast, the district court did not engage in a probable cause inquiry because it determined Miller failed to raise a genuine dispute of material fact as to whether she intentionally fabricated any evidence. The court therefore granted her motion for summary judgment on that basis.

This court concludes there was probable cause to support Miller's 2001 arrest and confinement. Miller therefore cannot make a showing sufficient to

establish a genuine dispute of material fact as to each element of his malicious prosecution claim against any defendant, including Arbogast. It is therefore unnecessary to consider separately the district court's analysis of Miller's claims against Arbogast. *See Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) ("We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal."). It is also unnecessary to determine whether or to what extent Spiers's involvement in the investigation and subsequent indictment of Miller exceeded the scope of his prosecutorial immunity. Even assuming that Arbogast and Fox acted at Spiers's specific direction at all relevant times, Miller failed to raise a genuine dispute of material fact as to the probable cause element of his claim against any defendant.

C. Probable Cause

A malicious prosecution claim is only actionable if it results in seizure or confinement. *See Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164–65 (10th Cir. 2009). This court therefore agrees with the district court's conclusion that the scope of Miller's claims against Arbogast, Spiers, and Fox is limited to allegations connected with his 2001 arrest and indictment because he was not seized or confined as a result of the 1999 or 2002 indictment attempts. Miller accepts this characterization of his claim on appeal. Thus, for Miller to withstand a motion for summary judgment, there must exist a disputed issue of material fact

as to whether probable cause supported his 2001 arrest. "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). In a malicious prosecution action, "[t]he question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it probable or true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to probable cause, is a question of law." *Rouse v. Burnham*, 51 F.2d 709, 712 (10th Cir. 1931); *see also Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003).

To determine whether probable cause supported the arrest and continued confinement of Miller in this malicious prosecution case, the court undertakes a five-step inquiry. First, the court determines if there is a question of fact as to whether particular items of evidence were fabricated; second, the court eliminates those items from consideration in its probable cause analysis; third, the court determines whether exculpatory evidence was improperly excluded from consideration; fourth, the court includes any such evidence in its analysis; fifth, the court determines whether probable cause still exists after factoring in all excisions and additions. *See Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006); *Taylor*, 82 F.3d at 1562.

In undertaking this inquiry, the district court excluded the following pieces of evidence: testimony from Arbogast that hair found on the Magdalena tarp was

"consistent" with samples of Miller's hair, trace evidence found in a steam cleaner which was allegedly used to clean Girly's apartment, all evidence related to business cards except for evidence indicating Miller possessed one of Linda Henning's business cards, and evidence related to the source of a Taurus handgun. The court included in its analysis that none of Miller's blood was found on Girly's carpet or on the Magdalena tarp, and that no hairs were tested which could be matched to him. The court also considered Miller's alibi evidence, which covered significant portions of September 9, 1999, and September 10, 1999.

Those inclusions and exclusions notwithstanding, the district court included sixteen pieces of evidence in its probable cause analysis, which it delineated as follows:

(1) Plaintiff told Rick Carlson[2] to shut up when Carlson asked about Girly on September 14, 1999; a few days later he told Carlson he knew much more about what was going on in the case than was in the news;

(2) Carlson was in constant fear of Plaintiff during this time period;

(3) Plaintiff sold a handgun to Diazien, gave a shotgun to Linda Henning, and sold her a handgun as well;

---

[2]Rick Carlson was an acquaintance of Miller who knew Miller, Diazien, and Henning through a weekly lunch group.

(4) Mr. Wilkin[3] and Ms. Staehlin[4] both informed Fox that Plaintiff told them Diazien wanted Plaintiff to kill Girly;

(5) Plaintiff was friends with both Diazien and Henning, and had taken them target-shooting;

(6) Plaintiff knows the Magdalena area well, from hunting trips there; he has friends in the area, and took Henning to that area in the month or two before Girly was murdered;

(7) the tarp and clothes containing Girly's DNA, as well as other trace evidence, were found in the Magdalena area;

(8) Plaintiff went to a bank on September 9, 1999 to open a safety deposit box; however, when he saw a uniformed APD officer enter the bank, he became extremely nervous and left suddenly without depositing anything into the box; a few days later, he returned and placed coins and currency into the box;

(9) Plaintiff owned two cats in September 1999;

(10) Linda Henning told her cellmate that Plaintiff was with "us" and did most of the work, and the duct tape used in the incident came from Plaintiff's truck;

(11) Diazien Hossencofft told his cellmate that he killed Girly and disposed of her body while "someone else" drove in the opposite direction with her clothes;

(12) before Girly went missing, Plaintiff called Ms. Staehlin and asked her to go out of town with him the weekend of September 10, 1999;

---

[3]Ron Wilkin met Miller at a lunch group approximately three months before the murder.

[4]Gail Staehlin was interviewed by Fox and another detective on September 13, 2000. She knew Miller through a weekly UFO lunch group. Staehlin told Fox that Miller told her he believed Diazien was an alien. When asked why he did not just walk away from it all, Miller told Staehlin that Diazien's "got him in a trance."

(13) the following items of trace evidence were found in Plaintiff's home during various searches: natural and dyed deer hair, including pink deer hair; natural and dyed rabbit hairs; natural and dyed feathers; and natural cat hairs;

(14) trace evidence collected from the tarp included two dyed rabbit hairs, two dyed green feathers, and one hundred and one cat hairs;

(15) trace evidence collected from Girly's carpet included sixty cat hairs, eighteen natural deer hairs, six dyed deer hairs, one natural rabbit hair, five dyed rabbit hairs, eleven natural feathers, and one pink feather; and

(16) the pink dyed deer hair located in Girly's carpet appeared to be consistent with the pink dyed deer hair collected from Plaintiff's residence.

Mem. Op. & Order, Doc. 253 at 34–35.

On appeal, Miller raises no specific challenges to items 1–12. In particular, he does not challenge item 10: Henning's statement to her cellmate inculpating Miller in Girly's kidnaping and murder. The district court noted the statements of a co-participant alone can be sufficient to establish probable cause as a matter of law. In *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 n.5 (10th Cir. 1998), this court stated "the finding of probable cause to support an arrest may be based on a co-defendant's hearsay statement, in whole or part." In particular, self-inculpatory statements of a co-participant in a crime have been held sufficient to supply probable cause for arrest. *See, e.g.*, *United States v. Patterson*, 150 F.3d 382, 386 (4th Cir. 1998); *Craig v. Singletary*, 127 F.3d 1030, 1045–46 (11th Cir. 1997) ("Ordinarily, unless it is incredible or contradicts

known facts to such an extent no reasonable officer would believe it, a co-defendant's confession that he and the suspect committed the crime can supply probable cause to arrest the suspect."). The court therefore need not address Miller's arguments concerning the possible contamination and reliability of the trace evidence used to indict him. Henning's statement alone is sufficient to establish probable cause for his arrest.

Miller, however, makes several broad-based attacks on the sufficiency of the evidence used to support the 2001 arrest warrant and indictment which could conceivably call into question Henning's statement. On closer examination, these arguments are insufficient to vitiate probable cause.

### 1. Alibi Evidence

Miller contends he had a verified alibi for the time period stretching from the afternoon of September 9, 1999, through September 10, 1999, which "trumps all of Defendants' claims of probable cause." Miller presented evidence, largely verified by the investigation of Detective Lescenski of the Albuquerque Police Department, which a reasonable fact-finder could conclude generally accounted for his whereabouts from the late afternoon to early evening hours of September 9, 1999, and for some portions of September 10, 1999. If Miller's alibi were truly comprehensive, it could conceivably render Henning's statement to her cellmate so contradictory to known facts that no reasonable officer could believe it. According to the arrest warrant, however, police were not certain of the time of

Girly's death, and were only able to determine that it occurred sometime between September 9 and September 10. Miller's alibi does not account for his whereabouts during the late evening hours of September 9 through the early morning hours of September 10. In considering the status of the evidence in the light most favorable to Miller, the district court properly concluded Miller's alibi does not account for all of the periods of time in which Girly could have been murdered.

Additionally, in the 2001 arrest warrant Miller was charged not only with murder and kidnaping but also with conspiracy. Physical presence at the crime scene is not required to sustain a conviction for conspiracy under New Mexico Law. *State v. Ochoa*, 72 P.2d 609, 616 (N.M. 1937); UJI 14-2811 NMRA, committee cmt. Thus, even if a jury concluded Miller's alibi covered the entire period during which Girly could have been killed, Henning's statement is still sufficient to establish probable cause.

### 2. Fox's Credibility

Miller next argues that Fox's credibility as a whole is at issue, creating a triable issue of material fact as to the truth of every statement in the arrest warrant affidavit, including Henning's statement. The district court concluded there was evidence suggesting Fox may have testified falsely about his knowledge of one of Henning's business cards at a suppression hearing in the criminal case against Miller. Specifically, the court concluded sufficient evidence existed from

which a reasonable jury could find that, during a suppression hearing in 2003, Fox attempted under oath to correct prior statements in which he said he was not present when the card was found in Miller's home and that he did not see it near the fireplace that day. The detective who found the card and was expected to lay the foundation for its admission at trial died, and the suppression hearing followed his death. The district court therefore concluded a reasonable jury could believe Fox lied about his involvement in the search in order to preserve the business card as evidence against Miller in the tampering case.

The district court properly rejected the argument that because Fox may have lied once, none of the factual recitations in the arrest warrant, including his account of Henning's statement, can be considered in a probable cause inquiry.[5] A contrary conclusion, if accepted, would effectively dispense with the *Grubbs* extractive-additive framework altogether. Under *Grubbs*, if evidence exists from

---

[5]Miller also alleges Fox "lied about more than one thing, more than one time." He alleges that Fox also "lied about . . . the destroyed notebook, the hand gun purchase, the Magdalena cat and, Ms. LaFlamme's verification of Miller's alibi." In support of this statement, Miller cites to portions of his response to a motion for summary judgment in the district court, which in turn includes citations to various exhibits filed in support of the response. Miller has not articulated precisely what "lies" Fox told about the above listed items, either in his briefs before this court or in the portions of the pleading he now references. Further, the court's review of the record does not uncover any evidence from which a reasonable fact finder could infer Fox lied about all of the above listed items. The court therefore need not decide whether a sufficiently thorough showing that an affiant lied about numerous items in an arrest warrant affidavit can create a triable issue of fact as to the truth of all of the statements in the affidavit.

-14-

which a reasonable jury could conclude a particular item in a search warrant was fabricated, the court excludes that evidence and considers whether probable cause would still exist without it. 445 F.3d at 1278. The court finds no authority supporting the additional inference that because an officer who attested to a warrant may have lied once, he wholly lacks credibility and therefore the veracity of every statement he made in the affidavit is put in issue. The court finds the analysis of the Sixth Circuit persuasive on this question. *See United States v. Robinson*, 272 F. App'x 421, 428 n.1 (6th Cir. 2007).

### 3. Missing Gold Coins

Miller argues the sequence of events surrounding the disappearance of 51 of his gold coins from the Albuquerque Police Department evidence room creates an inference that the defendants had a motive to frame him and casts a cloud on the credibility of the investigation as a whole. This argument would run as follows: the defendants had a motive to lie, therefore any of the statements in the affidavit could be lies, and therefore none of the statements in the affidavit can be considered under the extractive-additive framework. The district court rejected Miller's argument concerning the disappearance of the gold coins as lacking any evidentiary support and founded on "sheer and impermissible speculation." Such speculation is insufficient to withstand a motion for summary judgment. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (2009). On appeal, Miller points to no additional evidence in the record to substantiate his theory.

The court therefore declines to discount the statements made in the warrant affidavit on this basis.

### 4. Effect of Failure to Return Indictment

Miller argues the failure of the 1999 and 2002 grand juries to return an indictment necessarily establishes a genuine issue of material fact as to the issue of probable cause. The court rejects that argument. First, the failure of the grand jury to return an indictment in 1999 does not vitiate probable cause because that grand jury was not presented with any of the trace evidence collected from Girly's apartment, the Magdalena tarp, and Miller's residence. Regarding the 2002 grand jury proceeding, as discussed in part III.C, *supra*, the scope of Miller's claim is limited to the actions which preceded his seven week confinement, including the 2001 arrest warrant and indictment. In connection with that indictment, the district court concluded, and this court agrees, sufficient uncontroverted evidence existed to establish probable cause as a matter of law even after excluding certain inculpatory pieces of evidence and including certain exculpatory pieces of evidence in the analysis.

In a malicious prosecution action, whether a given set of facts, "supposing them to be true . . . amount[s] to probable cause, is a question of law" for the court, not a question of fact for the jury. *Rouse*, 51 F.2d at 712.[6] The failure of a

_____

[6]The court's application of *Rouse* in this malicious prosecution action is consistent with the approach of other courts faced with the same question:

(continued...)

-16-

subsequent grand jury to return an indictment, therefore, does not change the court's conclusion that the evidence which resulted in Miller's seven-week confinement was sufficient to establish probable cause justifying that confinement as a matter of law. Miller cites no authority, and the court is unable to find any, stating that the failure of a grand jury to return an indictment has any kind of preclusive effect in a subsequent civil action on the issue of probable cause. He is therefore not relieved of his duty to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

---

[6](...continued)
The rule that the question of probable cause in an action for malicious prosecution is for the court, and not for the jury, although undoubtedly anomalous in that it substitutes the judgment of the court for that of the jury as to the reasonableness of the defendant's conduct in the light of the admitted or established facts and beliefs, is nevertheless . . . established . . . by the overwhelming weight of authority.

C.C. Marvel, Annotation, *Probable Cause or Want Thereof, in Malicious Prosecution Action, as Question of Law for Court or of Fact for Jury*, 87 A.L.R. 2d 183, § 2 (1963). This approach is also consistent with the Restatement's formulation of the tort of malicious prosecution. *See* Restatement (Second) of Torts § 673 (1977).

## IV.  Conclusion

For the foregoing reasons, the court **AFFIRMS** the decision of the district court.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge