**F I L E D**

PUBLISH

**April 26, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROGER GRUBBS,

        Plaintiff-Appellant,

v.

No. 05-7076

KEN G. BAILES; MANUEL
BALLARD; HASKELL COUNTY,
a duly designated county of the
State of Oklahoma,

        Defendants-Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 03-CV-695-P)**

---

Submitted on the briefs:[*]

John M. Butler of John Mack Butler & Associates, Tulsa, Oklahoma, for
Plaintiff-Appellant.

Andy A. Artus and Robert R. Jones, Oklahoma City, Oklahoma, for
Defendants-Appellees.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Plaintiff Roger Grubbs appeals from the entry of summary judgment for defendants Haskell County, sheriff Manuel Ballard, and undersheriff Ken Bailes in this action under 42 U.S.C. § 1983. Plaintiff alleged that defendants violated his constitutional rights in two respects: (1) denying him equal protection under the law by failing to enforce trespass laws to protect his property, and (2) causing him to be arrested without justification for a firearm offense, based on misleading information provided to the prosecuting attorney, after he personally confronted three trespassers. The district court rejected the first claim on alternative grounds, holding that it was barred by a prudential standing principle and that it failed in any event for lack of evidentiary support. The court granted summary judgment on the second claim for lack of evidentiary support as well. We affirm for the reasons explained below.

Plaintiff is one of some twenty shareholders in the McCurtain Lake Club Inc. (MLC), a corporation formed to acquire and hold certain lakeside land for the use of the shareholders. While all of the details regarding distribution of the land are not fully set out in the materials in our record, the parties do not dispute the pertinent facts. MLC owned the land and granted certain possessory rights to all

shareholders free of charge.  Specifically, each MLC shareholder was "leased" a cabin site for his or her exclusive use and was granted joint use of the remaining common areas.  At times relevant to this action, plaintiff was also president of the corporation.

One of the common areas abutted non-MLC property that was used by the public for off-road activities involving dirt bikes, ATVs, and the like.  Plaintiff alleges that he complained of frequent trespassing by these off-road enthusiasts over a period of years but that the authorities did not take sufficient action to protect MLC property from trespass.  On January 1, 2002, he took matters into his own hands.  Armed with a pistol, he confronted three people, a woman, her son, and her nephew, who he insisted were riding four-wheelers onto MLC property.  Accounts of this incident differ:  plaintiff claims he merely showed the alleged trespassers that he was armed for self-protection; they reported that he pointed the pistol at them while ordering them to get off the property.  Undersheriff Bailes was directed to investigate the conflicting complaints.  He took statements from all parties and passed these on to assistant district attorney Danita Williams.  He did not recommend any particular action, though he did comment that "[t]he property in question in my opinion is not posted correctly and I do not believe that there is a clear policy on what [plaintiff's] duties are as the president of [MLC]."  Aplt. App. at 237.  Bailes also made the obvious point that "[plaintiff]

definitely has no right to pull a weapon on another person just to assert his opinions." *Id.*

Based on the statements and her own interviews with the complaining witnesses, Williams made the decision to prosecute plaintiff. *Id.* at 236.[1] She directed Bailes to fill out a probable cause affidavit and then presented the materials to secure a warrant. *Id.* Plaintiff was arrested and charged with violating Okla. Stat. tit. 21, § 1289.16 (felony pointing firearms), for "wilfully pointing a handgun at 13 year old J.H. his cousin J.A. and his mother Bobbie Jean Anderson for the purpose of threatening and ordering them off the property where they were riding 4 wheelers." Aplt. App. at 242. Prior to trial, however, the case was dismissed without prejudice upon payment of court costs by plaintiff's counsel. *See id.* at 180, 184. Plaintiff then brought this action challenging his arrest and complaining of the Sheriff's failure to enforce the property rights of MLC and its members.

### I. False Arrest/Malicious Prosecution

---

[1] Williams submitted two affidavits on defendants' behalf in this case. The first noted the statements she obtained from Bailes, while the second clarified that she had also personally spoken to the witnesses, *compare* Aplt. App. at 106 *with id.* at 236. Plaintiff "finds the latest affidavit to be suspicious," Aplt. Opening Br. at 8, but this kind of clarification, as distinguished from contradiction, is not a basis for discounting later testimony. *See Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1258 (10th Cir. 2001).

While constitutional claims for wrongful arrest, detention, and prosecution under § 1983 are analyzed in light of analogous torts, such as false arrest and malicious prosecution, the ultimate and indispensable element of such a claim is the deprivation of a constitutional right. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1285-90 (10th Cir. 2004); *Taylor v. Meacham*, 82 F.3d 1556, 1560-61 (10th Cir. 1996) ("[O]ur circuit takes the common law elements . . . as the 'starting point' for the analysis of a § 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a *constitutional* violation."). In the present context, "that constitutional right is the Fourth Amendment's right to be free from unreasonable seizures." *Taylor*, 82 F.3d at 1561; *see Pierce*, 359 F.3d at 1285, 1287 & n.5. Accordingly, the focal point of our analysis is the probable cause supporting plaintiff's arrest, which rested on the complaining witnesses' statements indicating that plaintiff had used his pistol as a threat to force them off the premises.

Plaintiff alleges that his arrest was the product of Bailes' misleading presentation of the relevant facts. The constitutional inquiry for such a claim focuses on the materiality of the misconduct in relation to the determination of probable cause:

> If an arrest warrant affidavit contains false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit. Where information has been omitted from an affidavit, we determine the

existence of probable cause by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.

*Taylor*, 82 F.3d at 1562 (citations and quotations omitted). If hypothetically correcting the misrepresentation or omission would not alter the determination of probable cause, the misconduct was not of constitutional significance and is not actionable under § 1983, *see, e.g.*, *id.* at 1562-63; but if this hypothesizing would alter the probable-cause determination, the misconduct undermined Fourth Amendment guarantees and may support redress under § 1983, *see, e.g.*, *Pierce*, 359 F.3d at 1293-94.

A large part of plaintiff's objection to his arrest is simply his insistence that his contrary version of events should have been credited. There are two very basic deficiencies with this approach. First, it is uncontested that Bailes did not conceal or withhold plaintiff's statement, but passed it along with those of the complaining witnesses. Second, as a general matter, a suspect's contradiction of a witness' accusation is not sufficient to vitiate probable cause; otherwise it would be virtually impossible to secure a warrant for anyone but a confessed offender. There is nothing compellingly credible or uniquely exculpatory about plaintiff's statement to afford it any exceptional significance in this case. The witnesses stated that he pointed his pistol; he stated that he merely showed it to them. Such disputes between accuser and accused are unremarkable in a criminal

law setting. In his statement to Bailes, plaintiff claimed that one of the witnesses threatened to retrieve a gun and "get even," Aplt. App. at 101. Even if credited, however, this fact would not justify plaintiff making an earlier threat with his firearm that prompted this reaction.

Plaintiff complains that Bailes did not report certain facts about the incident that he insists would have altered the determination of probable cause. These facts, such as the presence of MLC property markers and the cutting of an MLC fence near a no trespassing sign, relate to his assertion that the complaining witnesses were trespassing when he confronted them. Once again, plaintiff's argument is not directed at a material issue. The operative statute does provide an exception for use of a gun "in defense of . . . one's home or property," § 1289.16, but threatening mere trespassers at gunpoint is not within its scope. Oklahoma law has long recognized that, absent a threat of felonious activity, the defense of property encompasses only the right to resist trespassers with reasonable non-deadly force and, thus, does not allow a landowner to threaten them with firearms. *See Sherrill v. State*, 277 P. 288, 288-89 (Okla. Crim. App. 1929) (applying *Dickinson v. State*, 104 P. 923 (Okla. Crim. App. 1909)); *see also Hovis v. State*, 176 P.2d 833, 836 (Okla. Crim. App. 1947) (collecting cases summarizing relevant limitation on use of force to oppose mere trespasses). Accordingly, facts tending to show that the complaining witnesses were

trespassing would not have vitiated probable cause to arrest plaintiff for threatening them with a firearm in violation of § 1289.16. Plaintiff also insists he had a *constitutional* right "to point a pistol at someone in the protection of his own property." Aplt. Opening Br. at 18. He cites no authority for such a right and this court will not create such authority.

Plaintiff also advances two very general objections to the district court's treatment of his arrest claim. Neither has merit. He first complains that the court failed to set forth a rationale for rejecting the claim. To the contrary, the court invoked the controlling probable cause inquiry, explained that Bailes had not made any false statements to factor into the analysis, and concluded that the asserted omissions would not have vitiated probable cause. Aplt. App. at 254. Its rationale is essentially the same as this court's. Plaintiff next insists that probable cause is a question for the finder of fact and, as such, is inappropriate for summary judgment. His premise is correct but his conclusion is unwarranted. Where, as here, there is no genuine dispute about its existence, probable cause, like any material fact, is amenable to summary judgment. *See, e.g.*, *Wolford v. Lasater*, 78 F.3d 484, 489-90 (10th Cir. 1996).

At points in his appellate briefing, plaintiff interjects his suspicion that Bailes acted in retaliation for plaintiff's confrontation with a county excise board member whom plaintiff had exposed for illegally dumping trash. It is true that a

criminal prosecution undertaken "to discourage protected speech or expression violates the First Amendment and is actionable under § 1983." *Wolford*, 78 F.3d at 488. No such First Amendment claim was pled at the outset or later invoked in opposition to summary judgment. For whatever reason, plaintiff chose to proceed on other constitutional grounds. He cannot revisit that decision at this late stage; we review the case as it stood before the district court. *See generally Switzer v. Coan*, 261 F.3d 985, 990 (10th Cir. 2001).

## II.  Denial of Equal Protection under Trespass Laws

Plaintiff alleged that the Haskell County Sheriff's Office failed to enforce the trespass laws with respect to the MLC common area and thereby denied him equal protection under the law. This claim implicates two distinct issues on summary judgment.

### A.  Prudential Standing

As a general matter, shareholders suffer injury in the Article III sense when the corporation incurs significant harm, reducing the return on their investment and lowering the value of their stockholdings. *Franchise Tax Bd. of Cal. v. Alcan Aluminum, Ltd.*, 493 U.S. 331, 335-36 (1990). Satisfaction of constitutional standing requirements, however, is not the end of the inquiry:

> The more difficult issue is whether [shareholders] can meet the prudential requirements of the standing doctrine. One of these is the requirement that the plaintiff generally must assert his own legal rights and interest, and cannot rest his claim to relief on the legal

rights or interests of third parties. Related to this principle we think is the so-called shareholder standing rule. . . . [T]he rule is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment.

*Id.* at 336 (citations and quotations omitted). This prudential prohibition on shareholder standing has a well-established exception, "allowing a shareholder with a *direct, personal interest* in a cause of action to bring suit even if the corporation's rights are also implicated." *Id.* (emphasis added); *see, e.g., Heart of Am. Grain Inspection Serv., Inc. v. Missouri Dep't of Agric.*, 123 F.3d 1098, 1102 (8th Cir. 1997); *Cooper v. McBeath*, 11 F.3d 547, 551-52 (5th Cir. 1994).

The district court invoked the shareholder-standing prohibition to hold that plaintiff lacked standing to complain of law enforcement's inadequate response to trespassing on MLC property. If plaintiff's only connection with the property had been his ownership of MLC stock, so that any injury to him was solely a function of injury to the corporation's property holding, such a purely derivative interest would fall within the scope of the prudential prohibition on shareholder standing. Plaintiff, however, has a distinct legally recognized interest in the property.

As noted earlier, MLC shareholders held their own possessory interest in MLC property: an individual leasehold in their particular cabin site and a joint interest in the common areas. Oklahoma law has long recognized that a

-10-

possessory interest is sufficient to invoke a right against trespass. *See Lambert v. Rainbolt*, 250 P.2d 459, 461 (Okla. 1952) (following *City of Okla. City v. Hill*, 50 P. 242, 247 (Okla. 1897)). Indeed, the disruptive, noisy intrusion of trespassing off-roaders would appear to have a much more immediate and significant impact on the possessory rights of those, like plaintiff, using MLC property for their own enjoyment than on the corporation's formal ownership interest.

It thus appears that plaintiff has asserted a direct injury sufficient to satisfy the prudential standing principles in *Alcan*.[2] We need not, however, definitively

---

[2] Plaintiff's standing, however, is not wholly without doubt. In *Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065 (10th Cir. 2002), which did not reference *Alcan*, a shareholder alleged that his corporation had been denied a lease based on his race in violation of 42 U.S.C. § 1981. His claim for emotional distress resulting from this corporate contractual discrimination was dismissed for lack of standing. We affirmed, rejecting his effort to avoid the shareholder-standing prohibition. That holding is consistent with *Alcan*, given the derivative nature of the alleged injury. However, we framed the operative exception differently, qualifying the requisite individual injury with a uniqueness element not included in *Alcan*: "the actions of the third party that injure the corporation [must] also cause injury to the shareholder *which is unique to himself or herself as a shareholder* of the corporation and *not suffered by the other shareholders*." *Guides*, 295 F.3d at 1072 (emphasis added). Applied here, this would suggest that despite harm to a personal interest otherwise sufficient for standing under *Alcan*, no MLC shareholder/lessee could sue because all suffered alike. On closer reading, though, it appears that *Guides* addressed a different shareholder-standing exception, one derived from *Stat-Tech International Corp. v. Delutes*, 47 F.3d 1054, 1060 (10th Cir. 1995), which dealt with a state corporate law rule stated in *Nicholson v. Ash*, 800 P.2d 1352 (Colo. App. 1990). This rule does not look for direct injury distinct from a shareholder's derivative harm; it

(continued...)

resolve the matter here.  It has been noted on many occasions that the Supreme

Court's rejection of the practice of "hypothetical jurisdiction" in *Steel Company*

*v. Citizens for a Better Environment*, 523 U.S. 83 (1998), prohibits federal courts

from disposing of claims on the merits without first resolving Article III standing

issues.  Questions relating to *prudential* standing, however, may be pretermitted

in favor of a straightforward disposition on the merits.  *See, e.g.*, *In re Erie Forge*

*& Steel, Inc.*, 418 F.3d 270, 275 n.8 (3d Cir. 2005); *Am. Iron & Steel Inst. v.*

*OSHA*, 182 F.3d 1261, 1274 n.10 (11th Cir. 1999); *Fraternal Order of Police v.*

*United States*, 173 F.3d 898, 905 (D.C. Cir. 1999); *McNamara v. City of Chicago*,

138 F.3d 1219, 1222 (7th Cir. 1998).  We therefore turn to the district court's

<hr>

[2](...continued)
looks for harm to the plaintiff *as a shareholder* but requires that it be unique in
some way from that suffered by shareholders generally.  *Id.* at 1357.  *Combs v.*
*PriceWaterhouseCoopers LLP*, 382 F.3d 1196 (10th Cir. 2004), illustrates this
point.  In *Combs*, a minority shareholder claimed the majority shareholder had
breached various fiduciary duties.  Contending that harm to the plaintiff was only
derivative of injury to the corporation, the majority shareholder invoked the
shareholder-standing prohibition.  In response, the plaintiff relied on *Nicholson*,
leading this court to inquire whether he suffered "'injury as a stockholder, unique
to himself and not suffered by the other stockholders.'"  *Id.* at 1201 (quoting
*Nicholson*, 800 P.2d at 1357).  When the plaintiff cited direct injuries he suffered
as an employee distinct from his role as a shareholder (injuries *Alcan* would focus
on), we held they *were not relevant* to the *Nicholson* rule: "[plaintiff's] claims of
'uniqueness' are injuries in his status as an employee, not a stockholder.  As
such, . . . they failed to establish a unique injury to [plaintiff] in his status as a
shareholder."  *Id.*  Consistent with *Alcan*, we noted no standing problem affecting
these claims; rather, we held that they "would necessarily fail on the merits,"
as it was only in his capacity as a shareholder that the plaintiff could invoke the
underlying fiduciary duty necessary to support the claims.  *Id.* at 1200 n.2.

-12-

alternative disposition on the merits for a conclusive resolution of plaintiff's equal protection claim.

## B. Merits of Equal Protection Claim

Plaintiff's allegations regarding inadequate investigation/prosecution of those trespassing on MLC property do not implicate either a suspect class or a fundamental right.[3] As such, they fall under the rubric of a "class-of-one" equal protection claim, explicitly recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).[4] *See, e.g.*, *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210, 1215 (10th Cir. 2004) (analyzing victim's "reverse-selective enforcement claim" for inadequate investigation of crime under "class of one" principles). An essential element of such a claim is that the plaintiff "has been intentionally treated differently from others similarly situated." *Olech*, 528 U.S. at 564; *see, e.g.*, *Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001) ("As with any equal protection claim, [the plaintiff in a "class of one" case] must also demonstrate that he was treated differently than another who is similarly situated." (quotation omitted)). Indeed, we have explained that for

---

[3] We note there is no evidence in the record that defendants' alleged failure to enforce trespassing laws with respect to MLC property was related to plaintiff's clash with the excise board member he turned in for illegally dumping trash.

[4] "Class of one" is somewhat of a misnomer, in that what distinguishes such claims is the absence of a constitutionally salient class identification, not the number of plaintiffs per se. *See Olech*, 528 U.S. at 1074 n.*.

selective and reverse-selective enforcement claims, the plaintiff must "provide compelling evidence of other similarly situated persons who were in fact treated differently," because "the multiplicity of relevant (nondiscriminatory) variables" involved in law enforcement decisions "are not readily susceptible to the kind of analysis the courts are competent to undertake" in assessing equal protection claims. *Jennings*, 383 F.3d at 1214-15 (quotation omitted)

Here, plaintiff and other MLC shareholders/lessees have only testified or averred in general terms that defendants have failed to take sufficient action in response to a handful of trespassing complaints. The district court held that this evidence was insufficient to create a triable issue of constitutionally significant inadequate law enforcement per se. Without gainsaying that conclusion, we note the more glaring absence of evidence showing that defendants enforced trespassing laws in any different fashion with respect to other, similarly situated residents of the county. The entry of summary judgment based on the legal insufficiency of plaintiff's evidentiary showing on his equal protection claim was correct.

The judgment of the district court is AFFIRMED.

-14-