MATHESON, Circuit Judge,
concurring in part and dissenting in part.
INTRODUCTION
The plaintiffs in this case are two corporations — Hobby Lobby and Mardel — and the owners and managers of those corporations — the Greens. Asserting claims under the Religious Freedom Restoration Act (“RFRA”) and the Free Exercise Clause, these corporate and individual plaintiffs challenge a federal regulation requiring employers to provide employee health insurance that covers certain contraceptives. The challenged regulation (“the Regulation”) was promulgated under the 2010 Patient Protection and Affordable Health Care Act and applies to Hobby Lobby and Mardel. The Greens allege that it burdens their religious beliefs to manage their corporations in compliance with the Regulation by providing health insurance coverage for the contraceptives at issue.
The plaintiffs seek a preliminary injunction to bar the enforcement of the Regulation. In addressing this request for “an extraordinary remedy never awarded as of right,” Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), we cannot forget that the corporate and individual plaintiffs are not on common legal and factual ground. Each faces a unique set of problems that must be overcome to obtain a preliminary injunction.
Hobby Lobby and Mardel face a distinct and formidable challenge: a dearth of legal precedent that for-profit, secular corporations have rights under RFRA or the Free Exercise Clause. To overcome this *1179 obstacle, the plaintiffs attribute the beliefs of the Greens to the corporations and ignore the corporate form.
In contrast, the Greens start on more solid ground with respect to RFRA and the Free Exercise Clause. No one disputes that, as natural persons, the Greens have free exercise rights. Their distinct challenge is to demonstrate that the Regulation imposed on the corporations also burdens the Greens’ exercise of religion. To do so, they must first show they have standing to assert their free exercise rights and, if they do, demonstrate that the Regulation substantially burdens then-exercise of religion.
Each set of plaintiffs must show that the district court abused its discretion when it denied their request for a preliminary injunction because they could not meet their burden to demonstrate a substantial likelihood of success on the merits. See Gen. Motors Corp. v. Urban Gorilla, LLC, 500 F.3d 1222, 1226 (10th Cir.2007). With the plaintiffs’ burden in mind, I conclude that the district court did not abuse its discretion as to the corporate plaintiffs, Hobby Lobby and Mardel, but would remand for further consideration of the Greens’ request for a preliminary injunction on their RFRA claim.
As to the corporate plaintiffs, I agree with Chief Judge Briscoe that they did not meet their burden to show that RFRA applies to them. Their briefs lack adequate supporting precedent, and the record lacks evidence of how Hobby Lobby and Mardel hold and exercise religious beliefs in conflict with the Regulation. Also, I am thus far unconvinced that for-profit, secular corporations can so easily seize upon the religious beliefs of their owners to demonstrate a corporate religious conviction. The structural barriers of corporate law give me pause about whether the plaintiffs can have their corporate veil and pierce it too.
In contrast to Chief Judge Briscoe, however, I am not prepared to conclude once and for all that RFRA or the Free Exercise Clause provides no protection to any for-profit corporation. The legal and factual arguments have not been sufficiently developed to provide a definitive answer. Up until the recent court challenges to the Regulation, there is little or no case authority on whether a for-profit corporation has free exercise rights. We should not attempt a final answer on such a novel and significant question until we have to, and we do not have to at this early stage of this case. The circumstances in which this issue of first impression comes to us counsel against deciding it, other than to say that the plaintiffs have not met their burden at this point.
As to the Greens, the threshold issue is whether they have standing to assert then-rights under RFRA and the Free Exercise Clause. I think they do. I also agree with the Greens that the district court failed to address their precise burden under RFRA. It should do so on remand.
In accordance with the foregoing, my analysis of the district court’s preliminary injunction ruling begins with the corporate plaintiffs’ RFRA claim and then proceeds to the Greens’ RFRA claim. I end with a brief discussion of why the plaintiffs have not shown they are entitled to a preliminary injunction on their Free Exercise Clause claim.[1]
*1180 DISCUSSION
I. THE CORPORATIONS’ RFRA CLAIM
Hobby Lobby and Mardel seek a preliminary injunction, asserting that the Regulation violates their rights under RFRA. I agree with much of Sections I and II in Chief Judge Briscoe’s separate opinion, in which she raises serious concerns about the corporations’ entitlement to RFRA protection. In addition, I do not think the corporate plaintiffs have demonstrated they can so easily disregard the corporate form and assume the Greens’ religious beliefs. Accordingly, I do not think the district court abused its discretion in holding that Hobby Lobby and Mardel failed to show they are substantially likely to succeed on the merits of their RFRA claim.
Nevertheless, I would stop at concluding that the plaintiffs have not met their preliminary injunction burden and would not foreclose the issue of RFRA coverage for secular, for-profit corporations from future consideration. Prudential considerations of judicial restraint take me to this position.
A. Plaintiffs’ Failure to Meet Preliminary Injunction Burden on Law and Facts
Chief Judge Briscoe raises serious concerns about the majority’s analysis and conclusions. These concerns are sufficient to conclude that the district court did not abuse its discretion in denying a preliminary injunction to Hobby Lobby and Mardel.
I agree with the district court that our usual preliminary injunction standard applies because the plaintiffs seek relief that would “stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme.” Nova Health Sys. v. Edmondson, 460 F.3d 1295, 1298 n. 6 (10th Cir.2006). Accordingly, the plaintiffs “must show that four factors weigh in [their] favor: (1) [they are] substantially likely to succeed on the merits; (2) [they] will suffer irreparable injury if the injunction is denied; (3) [their] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.” Awad v. Ziriax, 670 F.3d 1111, 1125 (10th Cir.2012) (quotations omitted). The district court focused on the “substantially likely to succeed” factor.
RFRA itself contains no express indication that it covers secular, for-profit corporations. See generally 42 U.S.C. §§ 2000bb-2000bb-4. The majority relies on the Dictionary Act, which provides that corporations are persons “unless the context indicates otherwise.” 1 U.S.C. § 1. At least some of the context surrounding RFRA’s enactment does indicate otherwise: (1) no court decision recognizing free exercise rights for secular, for-profit corporations, see Briscoe Op. at 1167-68;[2] (2) no federal statute recognizing for-profit *1181 corporations as religious organizations; and (3) no acknowledgement that granting for-profit corporations such coverage could allow them to challenge a wide swath of federal laws governing employers’ obligations to employees.[3]
To obtain a preliminary injunction “the right to relief must be clear and unequivocal.” Nova Health Sys., 460 F.3d at 1298 (quotations omitted). Given the uncertainty regarding whether the corporate plaintiffs are covered by RFRA, they have not met their burden to clearly and unequivocally show that they are substantially likely to succeed on the merits.
I also share Chief Judge Briscoe’s concerns that the plaintiffs have provided almost no evidence to support many of the allegations in their complaint. In particular, they have not provided sufficient facts about specific alleged religious beliefs of the corporations with respect to the contraceptives at issue here or how those beliefs are defined and exercised by the corporations. The plaintiffs also provided few detailed facts and no supporting evidence concerning their employee health care policies and practices, including how they are managed and precisely how they affect the corporations’ religious beliefs.[4]
This evidence vacuum may explain why the plaintiffs paint their RFRA claim with a broad brush, pressing us to provide expansive answers to abstract legal questions. The allegations in the complaint suggest that Hobby Lobby and Mardel have features that could set them apart from other for-profit businesses and even from each other, but the plaintiffs provide no evidence in support. The record does not allow meaningful consideration of whether RFRA applies to either of the two plaintiff corporations.
B. Disregarding the Corporate Form
A threshold question is how Hobby Lobby and Mardel hold and exercise religious beliefs, including the specific beliefs at issue here. The majority and the plaintiffs attempt to bridge this gap by ignoring the *1182 corporate form and imputing the religious beliefs of the Greens to the corporations.[5] But they fail to contend with corporate law that recognizes legal distinctions between corporations and shareholders. See New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442, 54 S.Ct. 788, 78 L.Ed. 1348 (1934) (“As a general rule a corporation and its stockholders are deemed separate entities.”); Sipma v. Mass. Cas. Ins. Co., 256 F.3d 1006, 1010 (10th Cir.2001) (“[A] corporation is treated as a legal entity separate from its shareholders.” (quotations omitted)).
Although courts generally recognize corporations and their shareholders as distinct legal entities, in limited circumstances courts “disregard the corporate form” or “pierce the corporate veil.” Floyd v. IRS, 151 F.3d 1295, 1298 (10th Cir.1998).[6] This is done “only reluctantly and cautiously,” NLRB v. Greater Kan. City Roofing, 2 F.3d 1047, 1051 (10th Cir.1993), and the Supreme Court has called it a “rare exception.” Dole Food Co. v. Patrickson, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003). For instance, “Oklahoma has long recognized the doctrine of disregarding the corporate entity in certain circumstances])] ... under the legal doctrines of fraud, alter ego and when necessary to protect the rights of third persons and accomplish justice.” Fanning v. Brown, 85 P.3d 841, 846 (Okla. 2004); see also Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1378-80 (10th Cir.1980); Smoot v. B & J Restoration Servs., Inc., 279 P.3d 805, 813 (Okla.Ct.Civ.App.2012).
Many jurisdictions apply an alter ego theory in veil piercing cases. See Skull Valley Band of Goshute Indians v. Niel *1183 son, 376 F.3d 1223, 1251 (10th Cir.2004) (applying Utah law to ordinary veil piercing claim); Floyd, 151 F.3d at 1298 (applying Kansas law to reverse veil piercing claim).[7] In analyzing whether an alter ego theory justifies veil piercing under federal law, this court asks (1) “was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct,” and (2) “would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations.” Greater Kan. City Roofing, 2 F.3d at 1052.
Perhaps Hobby Lobby, Mardel, and the Greens can make a successful argument for disregarding the corporate form and sharing religious beliefs. But courts require evidence to disregard the corporate form, and the plaintiffs have presented none. Yet they filed their suit and immediately asked the district court to relieve the corporations of their legal obligations to their employees under the Regulation, even when we have repeatedly said that “a preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal.” Nova Health Sys., 460 F.3d at 1298 (alterations omitted) (quotations omitted).
C. Judicial Restraint
Although I conclude that the district court did not abuse its discretion in denying the corporate plaintiffs’ RFRA claim, I do not think we need to decide as a final matter whether for-profit, secular corporations have RFRA or Free Exercise Clause rights. The corporate plaintiffs’ failure to meet their burden of showing they are substantially likely to succeed on the merits is a sufficient basis to affirm the district court’s order.
Moreover, this court is being asked to answer whether RFRA covers for-profit, secular corporations in an expedited process, at a preliminary stage of the case, and without the benefit of a full record, a final judgment from the district court, or prior consideration from a panel of this court. The Supreme Court has not addressed this question, and few courts have even considered it. The issue is complex and involves critical areas of statutory and constitutional law. The answer will profoundly affect the relationship between the government and potentially millions of business entities in our society in ways we can only begin to anticipate. These circumstances are far from optimal to decide a heretofore unexplored question, yet the majority does so broadly and without hesitation.
To understand the meaning of RFRA requires delving into the scope and meaning of the Free Exercise Clause. See 42 U.S.C. §§ 2000bb (describing RFRA’s purpose and meaning in terms of the Free Exercise Clause).[8] “If there is one doc *1184 trine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.” United States v. Cusumano, 83 F.3d 1247, 1250-51 (10th Cir.1996) (quoting Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944)). Because we are at the preliminary injunction stage, where emphasis should be on the plaintiffs’ burden and the evidence presented, I do not think adjudication of the RFRA coverage issue is unavoidable. In these circumstances, we ought to exercise the “fundamental rule of judicial restraint.” Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984). I am therefore reluctant to hold that all, some, or no for-profit corporations are entitled to RFRA or Free Exercise Clause protection.
* * *
Chief. Judge Briscoe should not have to remind us that the plaintiffs need to do more than file a complaint and a motion to receive a preliminary injunction. They must earn it by meeting their “clear and unequivocal” burden of persuasion. They have not done so as to Hobby Lobby and Mardel. I would therefore affirm the district court’s denial of the preliminary injunction as to the corporate plaintiffs’ RFRA claim.
II. THE GREENS’ RFRA CLAIM
Unlike Hobby Lobby and Mardel, the Greens do not have to convince us that they have RFRA rights. It is clear they do. The obstacle they must overcome is whether they can claim that the Regulation violates their RFRA rights even though the Regulation applies to the corporate plaintiffs. ,
I would hold that the Greens have standing to pursue their RFRA claim because they have shown the Regulation injures them in a direct, personal way. I would then remand to the district court with instructions to reconsider their request for a preliminary injunction in light of a proper understanding of the Greens’ claim that the Regulation substantially burdens their religious beliefs.
A. The Greens Have Standing
The Greens must first convince us they have standing to challenge the Regulation under RFRA.
The standing “inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.” Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). As “[t]he party invoking federal jurisdiction,” the Greens “bear[] the burden of estab *1185 lishing [their standing] ... in the same way as any other matter on which the plaintiff bears the burden of proof, ie., with the manner and degree of evidence required at the successive stages of the litigation.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2180, 119 L.Ed.2d 351 (1992) (citations omitted). Thus, “at the preliminary injunction stage, [the Greens] must make a ‘clear showing’ ” that they have standing. Lopez v. Candaele, 630 F.3d 775, 785 (9th Cir.2010) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)).
1. Article III Standing
“[T]he core component of standing is an essential and unchanging part of the case- or-controversy requirement of Article III.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130. This “irreducible constitutional minimum” is established by three elements. Id. The Greens must demonstrate “(1) that [they have] suffered an injury in fact; (2) that the injury is ‘fairly traceable to the challenged [regulation];’ and (3) that it is ‘likely’ that ‘the injury will be redressed by a favorable decision.’” Awad, 670 F.3d at 1120 (quoting Ariz. Christian Sch. Tuition Org. v. Winn, — U.S. —, 131 S.Ct. 1436, 1442, 179 L.Ed.2d 523 (2011)).
The crux of the Greens’ Article III standing concerns the first element, injury in fact. An injury in fact is “an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (citations omitted) (quotations omitted). Here, the Greens allege they are injured because by July 1, 2013, they must either manage their corporations to comply with the Regulation, and thereby violate their religious beliefs, or subject the corporations to fines for noncompliance. At the very least, they have shown their alleged injury is imminent. But they must also show they have suffered an injury that goes to a “legally protected” interest and that their injury is “concrete and particularized.” Id.
“Determining whether a plaintiff has alleged a sufficient injury in fact is often not difficult,” but when the alleged injury is neither physical nor economic, it may be more challenging. Awad, 670 F.3d at 1120.[9] Although “standing may be predicated on noneconomic injury,” not every noneconomic injury is sufficient. Valley Forge, 454 U.S. at 486, 102 S.Ct. 752. For example, “the psychological consequence presumably produced by observation of conduct with which one disagrees is not a sufficient injury in fact.” Green v. Haskell Cnty. Bd. of Comm’rs, 568 F.3d 784, 793 (10th Cir.2009) (quotations omitted). A plaintiffs grievance must be more than a mere “‘religious difference’” that is “‘a generally available grievance about government,’ ” Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 601, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007) (quoting Doremus v. Bd. of Educ. of Borough of *1186 Hawthorne, 342 U.S. 429, 434, 72 S.Ct. 394, 96 L.Ed. 475 (1952), and Lujan, 504 U.S. at 573-74, 112 S.Ct. 2130), “hurt feelings,” Freedom from Religion Found., Inc. v. Obama, 641 F.3d 803, 807 (7th Cir.2011), or even a “deep and genuine offense” to a particular law or conduct, Catholic League for Religious & Civil Rights v. City & Cnty. of San Francisco, 624 F.3d 1043, 1062 (9th Cir.2010) (en banc) (Graber, J., dissenting).[10]
The Greens assert an injury to their free exercise rights, which certainly constitute a legally protected interest. See Wisconsin v. Yoder, 406 U.S. 205, 214, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). To establish an injury to this legally protected interest, the Greens must show that the challenged government action infringes on their “particular religious freedoms.” Sch. Dist. of Abington Twp., Pa. v. Schempp, 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). They have done so.
The Greens contend their religious beliefs require them to refrain from any conduct or action that would assist others in using particular contraceptives.[11] The Greens’ roles as managers of Hobby Lobby and Mardel place them between two imminent, concrete, and particularized injuries: the Regulation requires them (1) to violate this religious obligation by implementing their corporations’ compliance with the Regulation or (2) to disregard the Regulation and risk the financial future of the corporations they own and operate. The Regulation causes this injury, and an exemption under RFRA or the Free Exercise Clause would redress it.
The Government argues that the Greens have not shown an injury in fact because only the corporations are subject to the Regulation and its penalties for noncompliance. But this does not preclude the Greens’ satisfaction of the injury requirement. Even an indirect injury may be an injury for Article III purposes. See Warth, 422 U.S. at 505, 95 S.Ct. 2197 (“[T]he indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights.”). And plaintiffs may suffer injury from the enforcement of a law or regulation even if it does not directly apply to them. See Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).
“ ‘At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.” Awad, 670 F.3d at 1120 (quoting Massachusetts v. E.P.A., 549 U.S. 497, 517, 527, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007)). The Greens’ RFRA and Free Exercise claims satisfy this requirement.
*1187 2. Prudential Standing
Even when Article Ill’s standing requirements are satisfied, there are “other limits on the class of persons who may invoke [federal courts’] decisional and remedial powers.” Warth, 422 U.S. at 499, 95 S.Ct. 2197. Such prudential standing requirements include the “shareholder standing rule,” which provides that “conduct which harms a corporation confers standing on the corporation, not its shareholders.” Bixler v. Foster, 596 F.3d 751, 756 (10th Cir.2010) (quoting Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd., 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990) (“Alcan ”)). A shareholder may not bring claims for injuries that are “derivative” of, or indistinct from, the corporation’s injury. Id. at 758.
Because the Regulation applies to Hobby Lobby and Mardel, there is a question of whether the Greens’ alleged injury is derivative. This issue arises because the Greens emphasize their shareholder status, and the Greens do not help matters because they insist that their interests, burdens, and injuries are identical to the corporations’.[12] Nonetheless, I do not believe the shareholder standing rule applies because the Greens have alleged an injury that is direct and personal.[13]
*1188 a. Shareholder standing exception: direct and personal injury
A well-established exception to the shareholder standing rule is that “a shareholder with a direct, personal interest in a cause of action [may] bring suit even if the corporation’s rights are also implicated.” Alcan, 493 U.S. at 336, 110 S.Ct. 661; see also Grubbs v. Bailes, 445 F.3d 1275, 1280 (10th Cir.2006). Purely financial injuries to a shareholder’s corporate investment are typically derivative and do not fall under this exception. E.g., Bixler, 596 F.3d at 758 (alleged injury — financial loss from corporation’s RICO violations — was derivative because it was based solely on plaintiffs’ status and rights as shareholders). This is true even when the defendant’s alleged wrongdoing involves a civil rights violation. E.g., Diva’s Inc. v. City of Bangor, 411 F.3d 30, 42 (1st Cir.2005) (shareholder’s § 1983 claim barred because alleged injuries were purely financial and were identical to the corporation’s); Potthoff v. Morin, 245 F.3d 710, 717-18 (8th Cir.2001) (same); Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel, 20 F.3d 1311, 1317-18 (4th Cir.1994) (same).
But even though shareholders may suffer derivative financial harm, they may also separately suffer a direct and personal injury. In Alcan, a foreign corporation challenged a state franchise tax imposed on its subsidiary corporation. 493 U.S. at 336-37, 110 S.Ct. 661. At issue was whether the plaintiffs injury was merely the “decline in the value of [the shareholder’s] ownership interest,” in which case it would have been derivative. Id. at 337, 110 S.Ct. 661. The Supreme Court dismissed the claim on other grounds, but it left open the possibility that a separate injury — namely, a burden on the shareholder’s decisions about “participation in the American economy” — would satisfy prudential standing requirements. Id. at 338,110 S.Ct. 661.
We applied Alcan in Grubbs, where the shareholder of a corporation that held land for shareholder use sued a sheriffs department for failing to protect the land against trespassers. 445 F.3d at 1277. The shareholder retained an individual leasehold in the property, giving him a state law right against trespass. Id. at 1280. His injury was to a “distinct legally recognized interest,” and therefore was direct and personal and “sufficient to satisfy the prudential standing principles in Alcan.” Id. at 1277, 1280.[14] (As in Alcan, we ultimately rejected the claim on other grounds without “definitively resolv[ing]” the shareholder standing issue. Id. at 1280.)
b. Direct and personal injury exception applies to the Greens
The Greens’ injury is direct and personal regardless of whether the corporations *1189 are covered by RFRA. If the corporations have no RFRA rights, the Greens’ alleged free exercise injury is not derivative of a corporate free exercise injury. If, on the other hand, the corporations do possess RFRA rights, a bit more analysis is required.
Although the Greens may suffer financial losses arising from non-compliance with the Regulation, their core alleged injury is religious. The Greens claim that the Regulation injures them directly and personally because it requires them to take affirmative action contrary to their religious beliefs: they must implement coverage for the contraceptives at issue.
The Greens are not only shareholders, they are also directors and officers of the corporations. They own and manage Hobby Lobby and Mardel and will be directly and personally involved in implementing the Regulation.[15] The situation might be different, for example, for a shareholder who has no role in managing the corporation and is unlikely to be involved in any of the details of the corporation’s health plan. Conversely, a human resources manager who does not also serve as shareholder, officer, or director could be relieved of responsibility connected to the Regulation, perhaps by requesting accommodation under Title VII. See Rodriguez v. City of Chicago, 156 F.3d 771, 774-78 (7th Cir.1998) (police officer’s religious beliefs opposing abortion entitled him to reasonable accommodation under Title VII to be excused from assignment guarding health clinic where abortions were performed).
The Greens’ injury is not purely financial. At its core, their injury is religious. Like the shareholder in Grubbs, they assert rights that are independent of their shareholder status. Whether or not their RFRA claim prevails, the Greens have standing to have the claim heard in federal court.
B. The Greens’ RFRA Claim Should Be Remanded
The next issue is whether the district court abused its discretion in concluding that the Greens failed to show a substantial likelihood of success on the merits of their RFRA claim. The court determined that the burden on their religious exercise was not substantial. Because I conclude the court misunderstood the nature of the Greens’ burden, I would remand for reconsideration of their RFRA claim.
The district court concluded that the Greens’ RFRA claim was not substantially likely to succeed because the burden on their religious exercise was “indirect and attenuated” and therefore not substantial. Hobby Lobby Stores, Inc. v. Sebelius, 870 F.Supp.2d 1278, 1294 (W.D.Okla.2012). It defined the burden as the possibility that “funds, which plaintiffs will contribute to a group health plan, might, after a series of independent decisions by health care providers and patients covered by [their] plan, subsidize someone else’s participation in an activity that is condemned by plaintiffs religion.” Id. (quoting O’Brien v. U.S. Dep’t of Health & Human Servs., 894 F.Supp.2d 1149, 1159 (E.D.Mo.2012)). This statement misconstrues the Greens’ religious objection.
The Greens acknowledge that their religious beliefs are not “even implicated” by their employees’ independent medical choices. Aplt. Br. at 27. But they assert “that their faith demands they refrain from participating in, providing access to, paying for, training others to engage in, or *1190 otherwise supporting” the use of particular contraceptives. Id. (quotations omitted). The district court abused its discretion by applying its substantial burden analysis to an incorrectly understood religious burden. See Korte v. Sebelius, No. 12-3841, 2012 WL 6757353, at *3 (7th Cir. Dec. 28, 2012) (“The religious-liberty violation at issue here inheres in the coerced coverage of contraception ... not — or perhaps more precisely, not only — in the later purchase or use of contraception or related services.”). The burden would arise from having to provide coverage in contravention of the Greens’ religious beliefs.
As previously explained, the alleged burden on the Greens’ religious exercise constitutes an injury for standing purposes. But to prevail on the merits of a RFRA claim, the Greens must show a substantial burden. The district court did not conduct the proper analysis due to its erroneous view of the burden on the Greens’ exercise of religion. I therefore would remand to the district court to reconsider the substantial burden issue. Depending on the outcome of that analysis, the court may also need to address whether the Regulation satisfies strict scrutiny and also consider the remaining preliminary injunction factors with respect to the Greens’ RFRA claim.
III. FREE EXERCISE CLAUSE CLAIM
The district court did not abuse its discretion in denying a preliminary injunction for the plaintiffs’ Free Exercise claim because they have not clearly and unequivocally shown that they are substantially likely to succeed on the merits.
“[Tjhe ‘right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).’ ” Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, — U.S. —, 132 S.Ct. 694, 706, 181 L.Ed.2d 650 (2012) (quoting Emp’t Div., Dep’t of Human Res. of Or. v. Smith, 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)). For this reason, the Supreme Court has concluded that “a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.” Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). Rather, “[government actions that stem from ‘neutral’ rules of ‘general applicability’ are subject to rational basis review.” Taylor v. Roswell Indep. Sch. Dist., 713 F.3d 25, 52 (10th Cir.2013) (quoting City of Hialeah, 508 U.S. at 531, 113 S.Ct. 2217).
The Regulation is a neutral rule of general applicability “so long as its object is something other than the infringement or restriction of religious practices.” Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 649-50 (10th Cir.2006); see also Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1233 (10th Cir.2009); Axson-Flynn v. Johnson, 356 F.3d 1277, 1294 (10th Cir.2004) (“A rule that is diseriminatorily motivated and applied is not a neutral rule of general applicability.”). The Regulation was enacted to promote women’s access to health care — a purpose entirely unrelated to religion. And it applies generally to for — profit corporations based on criteria unrelated to its shareholders’ religious views. See Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist. No. I-L, 135 F.3d 694, 698 (10th Cir.1998) (law is generally applicable because it applies to an activity whether motivated by religious or secular purpose).
*1191 Under rational basis review, the Regulation survives a constitutional challenge if it is at least “rationally related to a legitimate government interest.” Corder, 566 F.3d at 1232. The plaintiffs have not argued that the Government’s stated purpose of promoting women’s access to health care is not legitimate, nor have they suggested that the Regulation is not rationally related to this purpose.
The district court did not abuse its discretion in concluding that the plaintiffs have not shown that their Free Exercise Clause claim is substantially likely to succeed on the merits.
CONCLUSION
I would (1) affirm the district court’s denial of a preliminary injunction for Hobby Lobby and Mardel on their RFRA claim; (2) conclude that the Greens have standing to assert their RFRA and Free Exercise claims; (3) reverse the district court’s holding that the Greens’ RFRA claim is not substantially likely to succeed and remand for reconsideration; and (4) affirm the district court’s denial of a preliminary injunction on the plaintiffs’ Free Exercise Clause claim.
Finally, I concur that the Anti-Injunction Act does not apply to this case.

. I address whether the plaintiffs should receive preliminary relief on their Free Exercise Clause claim for two reasons. First, because I would affirm on Hobby Lobby's and Mardel’s RFRA claim and remand the Greens’ RFRA claim, the district court would need to know where we stand on its earlier Free Exercise Clause preliminary injunction ruling. Second, consistent with avoidance of novel constitutional questions, see Three Affiliated Tribes of the Fort Berthold Reservation v. Wold *1180 Engineering, 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984), we need not decide whether the Free Exercise Clause applies to for-profit corporations, an issue of first impression, by instead addressing the more conventional question of whether the Regulation is neutral, generally applicable, and rationally based. See Section III, infra.

. "Context” for purposes of the Dictionary Act includes "the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts.” Rowland v. Cal. Men’s Colony, Unit II Men’s Advisory Council, 506 U.S. 194, 199, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993). In considering statutory text, if "the plain meaning ... is unclear, we turn to the 'legislative environment’ ... searching for an indicia of congressional intent at the time the statute was enacted.” United States v. Doe, 572 F.3d 1162, 1169 (10th Cir.2009) (quotations omitted). RFRA itself guides us to consider free exercise case law decided before its enactment The text refers to Supreme Court decisions, including in the statute's description of findings and purpose. See, e.g., § 2000bb(a)-(b). Indeed, "Congress enacted RFRA in direct response *1181 to the Court's decision in Employment Div., Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).” City of Boerne v. Flores, 521 U.S. 507, 512, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

. As Chief Judge Briscoe notes, granting RFRA coverage to for-profit corporations opens the door to challenges to federal statutes such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Fair Labor Standards Act (“FLSA”), 29 U.S.C. § 201 et seq., and various immigration laws. If the majority is correct that Congress intended to grant free exercise rights to for-profit corporations under RFRA, we would expect to find evidence in the legislative record that Congress addressed, or at least discussed, these consequences. The legislative record contains no such evidence. See Briscoe Op. at 1168-69.
The majority attempts to answer this concern, in part, by suggesting that the government has a compelling interest in uniform enforcement of the FLSA. Maj. Op. at 1141 n. 16. But the answer to this question is far from clear. Neither the Supreme Court nor this circuit has held that uniform enforcement of FLSA is a compelling government interest or that its application would satisfy the least restrictive alternative requirement in a RFRA challenge. Moreover, many of the reasons the majority cites for concluding that the Regulation fails strict scrutiny would apply equally to the FLSA and to other federal laws, including those mentioned above.

. The plaintiffs have failed, for example, to provide the district court with complete information about the financial strain they would bear if they did not provide health care insurance coverage to their employees. They allege that they would face a penalty of $26 million but do not allege or prove the offsetting expenses they would save. See Maj. Op. at 1141. These facts are relevant to substantial burden and other preliminary injunction factors.

. For example, the majority asks, "Where did Hobby Lobby and Mardel lose their Free Exercise rights?” Maj. Op at 1137 n. 12. But this begs the question of whether these entities acquired such rights. Have Hobby Lobby and Mardel'shown clearly and unequivocally that it is substantially likely they have such rights?

. The issue of piercing the corporate veil has surfaced in other RFRA challenges to the Regulation. See, e.g., Grote v. Sebelius, 708 F.3d 850, 858 (7th Cir.2013) (Rovner, J., dissenting) (stating that individual plaintiffs did not make a "piercing the corporate veil” argument to attribute corporate expenditures for the health care plan to themselves); Conestoga Wood Specialties, Inc. v. Sebelius, No. 13-1144, 2013 WL 1277419, at *7, 2013 U.S. Dist. LEXIS 2706, at *14-15 (3d Cir. Feb. 7, 2013) (Garth, J\, concurring) (rejecting the corporate plaintiff’s claim "that it should be construed as holding the religious beliefs of its owners,” stating, " 'It would be entirely inconsistent to allow [individual plaintiffs] to enjoy the benefits of incorporation, while simultaneously piercing the corporate veil for the limited purpose of challenging these regulations.’ ”) (quoting Conestoga Wood Specialities, Corporation v. Sebelius, No. 12-6744, 917 F.Supp.2d 394, 409, 2013 WL 140110, at *8 (E.D.Pa. Jan. 11, 2013)); Gilardi v. Sebelius, No. 13-104(EGS), 926 F.Supp.2d 273, 280, 2013 WL 781150, at *7 (D.D.C. Mar. 3, 2013) (using the same quote and agreeing with Conestoga); Briscoe v. Sebelius, No. 13-cv-00285-WYD-BNB, 927 F.Supp.2d 1109, 1117-18, 2013 WL 755413, at *6 (D.Colo. Feb. 27, 2013) (same); Korte v. U.S. Dep’t of Health & Human Servs., No. 3:12-CV-01072-MJR, 912 F.Supp.2d 735, 748, 2012 WL 6553996, at *11 (S.D.Ill. Dec. 14, 2012) ("The fact that a 'corporate veil’ (regardless of how thin) stands between the [individual owners] and [the corporation], and another legal 'veil' is between [the corporation] and the group health plan, cannot be ignored.”) (denying motion for preliminary injunction), injunction pending appeal granted by, Korte v. Sebelius, No. 12-3841, 2012 WL 6757353 (7th Cir. Dec. 28, 2012). The court in Gilardi also said it was "troubled by plaintiffs' apparent disregard of the corporate form in this case” and “decline[d] to disregard the corporate form by imputing the religious belief of the Gilardis to the corporations they own.” 2013 WL 781150, at *4, 6. In Newland v. Sebelius, 881 F.Supp.2d 1287 (D.Colo.2012), the court asked, "Is it possible to ‘pierce the veil' and disregard the corporate form in this context?” Id. at 1296.

. Ordinary veil piercing occurs when external plaintiffs seek to hold shareholders liable for the corporation’s debts. See Floyd, 151 F.3d at 1298. The plaintiffs’ claims would likely involve so-called reverse veil piercing, in which the corporation itself or a controlling insider asks a court to disregard the corporate form to obtain some advantage, avoid liability, or claim legal protections not otherwise available. See id.; Love v. Flour Mills of Am., 647 F.2d 1058 (10th Cir.1981) (declining to apply reverse veil pierce under Oklahoma law but leaving open the possibility in other circumstances); Cargill, Inc. v. Hedge, 375 N.W.2d 477 (Minn.1985) (allowing reverse veil pierce in bankruptcy action to recognize homestead exception for home owned by a corporation but occupied by shareholder family); see also Gregory S. Crespi, The Reverse Pierce Doctrine, 16 J. Corp. L. 33, 37 (1991).

. The majority’s attempt at using history to support its conclusion illustrates the uphill burden of showing clearly and unequivocally a substantial likelihood that RFRA covers for-profit corporations. Not surprisingly, opinions differ about the history surrounding the *1184 adoption of the Free Exercise Clause. The Supreme Court's limited attempts to explore that history have taken different directions. See Church of the Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 575-77 & n. 6, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (Souter, J., concurring). Professor McConnell’s article explores multiple possible explanations for the inclusion of "free exercise of religion” rather than "liberty of conscience” in the First Amendment. See Michael W. McConnell, The Origins and Historical Understanding of Free Exercise of Religion, 103 Harv. L.Rev. 1409, 1488-1500 (1990); but see Philip A. Hamburger, A Constitutional Right of Religious Exemption: A Historical Perspective, 60 Geo. Wash. L.Rev. 915 (1992) (reviewing and criticizing Professor McConnell’s general conclusions regarding original meaning of the Free Exercise Clause). If history is to be our guide, neither the plaintiffs nor the majority have marshaled the evidence or fully canvassed the scholarship.

. As Judge Gorsuch’s concurrence notes, Hobby Lobby and Mardel face penalties if they do not comply with the Regulation. These penalties would reduce the corporations’ value, and the resulting economic injury would affect the Greens as shareholders. Such an injury ordinarily satisfies Article Ill’s injury requirement. See Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd., 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990); Grubbs v. Bailes, 445 F.3d 1275, 1280 (10th Cir.2006). Even if the Greens were not shareholders, as Chief Judge Briscoe suggests, see Briscoe Op. at 1177, no one disputes that the Greens are exposed to a financial injury, which is sufficient for Article III standing. See Alcan, 493 U.S. at 336, 110 S.Ct. 661 (analyzing whether injury to a corporation will cause "actual financial injury” to those with an ownership interest). Nevertheless, I understand the Greens’ primary al *1186 leged injury to be interference with their religion.

. These examples come from cases involving claims brought under the Establishment Clause, while the Greens' claims involve religious exercise. We know from case law that requirements for standing under the Establishment Clause and the Free Exercise Clause differ, but these cases are nevertheless instructive.

. The Greens’ statements in their verified complaint are sufficient evidence of their individual religious beliefs. See Taft v. Vines, 83 F.3d 681, 685 n. * (4th Cir.1996) ("[A] verified complaint is the equivalent of an ... affidavit ... when the allegations ... are based on personal knowledge.”); see also Sheinkopf v. Stone, 927 F.2d 1259, 1263 (1st Cir.1991) (verified complaint equivalent to affidavit to the extent it is based on matters of personal knowledge); Runnels v. Rosendale, 499 F.2d 733, 734, n. 1 (9th Cir.1974) (same). (We note that the complaint does not specify the corporations’ alleged religious beliefs, but even if it did, there is no legal precedent to guide us in how a corporate entity could establish and define legally recognized religious beliefs.)

. The plaintiffs’ appellate brief describes the corporations throughout as a "family business” and the Greens as "owners.” See Aplt. Br. at 1-2, 20, 22, 33-36. The plaintiffs’ complaint and arguments acknowledge no distinction between the corporate plaintiffs and the Greens, and they continuously attribute the Regulation’s requirements and penalties and the religious beliefs at issue interchangeably to "the Greens,” "Hobby Lobby,” and "Plaintiffs.” E.g., Complaint at 24, 27-39 (myriad references to the "Plaintiffs’ ” obligations under the Regulation and "Plaintiffs’ religious beliefs”); see also, e.g., Aplt. Br. at 5 (The Regulation "forces the Greens and Hobby Lobby to violate their religious beliefs ... ”); id. at 1 ("If the Greens do not comply ... they face massive fines.”); id. at 18, 22, 27. As discussed earlier, this ignores that "a corporation is regarded as a legal entity, separate and distinct from the individuals comprising it.” Fanning, 85 P.3d at 846. The Greens have failed to develop a legal or factual basis to allow the court to disregard the corporate form.

. My conclusions on the Greens' standing are generally consistent with Judge Gorsuch’s concurrence. I do not join his concurrence for several reasons. I do not believe we can conclude at this point that the Greens are entitled to relief. Because this court raised the standing issue and asked the Government to brief it, I do not think we should decline to consider the Government’s prudential standing arguments. And I am not convinced that RFRA forecloses consideration of prudential standing for the reasons Judge Bacharach has raised in his concurring opinion. Bacharach Op. at 1162.
I disagree, however, with Judge Bacharach’s conclusion that the shareholder standing rule prevents the Greens’ claims, for reasons described in this section. Additionally, I do not agree that the Greens’ fiduciary duties to the corporations as officers and directors determine whether their free exercise injury is derivative. Shareholders do not owe the same fiduciary duties to corporations that officers and directors do. See, e.g., In re Midway Games, Inc., 428 B.R. 303, 313, 319 (Bankr. Del.2010) (officers and directors owe a duty of loyalty and good faith to advance the interests of the corporation, while shareholders are entitled to advance their own economic interests). The fiduciary duties to which Judge Bacharach refers are separate from the Greens' shareholder status and cannot resolve the shareholder standing issue. Even if these fiduciary duties were relevant to standing, assuming they place added pressure on the Greens to comply with the Regulation and thereby violate their religious obligations, this would strengthen the argument that their injury is direct and personal and not derivative of any injury to the corporations.
Chief Judge Briscoe suggests this analysis would create a "management standing” rule. Briscoe Op. at 1177. No such rule is proposed. The standing analysis in this section applies well-established Article III and prudential standing law to the facts of this case.

. Another case from this circuit came to a different conclusion. In Guides Ltd. v. Yarmouth Group Property Management., Inc., 295 F.3d 1065 (10th Cir.2002), a corporation brought a § 1981 claim for race discrimination, and the corporation’s sole shareholder added an individual claim for emotional distress. We rejected the individual claim on prudential standing grounds. But Guides did not apply the Alcan rule. It relied on In re Stat-Tech Int’l Corp., 47 F.3d 1054 (10th Cir. 1995), a Tenth Circuit case that applied a "different shareholder standing exception” that "does not look for direct injury distinct from a shareholder’s derivative harm; it looks for harm to the plaintiff as a shareholder but requires that it be unique in some way from that suffered by shareholders generally.” Grubbs, 445 F.3d at 1280 n. 2 (10th Cir.2006) (summarizing Guides); see also In re Stat-Tech, 47 F.3d at 1059. We have most often applied this second shareholder standing exception in cases arising under state law where minority shareholders claim financial injuries from actions of the corporation or a majority shareholder. E.g., Combs v. PriceWaterhouse Coopers LLP, 382 F.3d 1196, 1199-1200 (10th Cir.2004); In re Stat-Tech, 47 F.3d at 1059.

. This point answers Judge Hartz’s hypothetical about the rabbi who owns a kosher-matzo business. The rabbi retains his RFRA rights when he incorporates his business. Conversely, his corporation does not necessarily acquire his RFRA rights by virtue of his religious beliefs, though, as noted earlier, I would leave that question open for now.